# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MITCHELL PADDOCK,**

        **Plaintiff,**

        **v.**                                   **Case No. 16-CV-947**

**UNITED STATES OF AMERICA,**

        **Defendant.**

# FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING COURT TRIAL

On March 7, 2012, a United States Postal Service semi-truck side-swiped Mitchell Paddock as he was driving east on Interstate 94 near Miller Park in Milwaukee at between 10 to 30 miles-per-hour. (ECF No. 40 at 29; Exs. 1; 2 (stating "≈30mph"); 3 at 1 (stating "pt was going 20mph"); 3 at 3 (stating "It is estimated that the motor vehicle was traveling between 10 and 25 mph when the accident occurred.").) The collision caused Paddock's Pontiac Grand Prix to spin 90-degrees so his driver's side door was against the grill of the semi-truck. (ECF No. 40 at 29; Ex. 1.).

The United States concedes that the driver of the postal truck was responsible for the crash. Paddock has been compensated for his property damage but pursued this

action seeking compensation for medical expenses he incurred allegedly as a result of the accident. (ECF No. 43 at 2.) The principal dispute concerns whether lumbar surgery performed on November 8, 2013, is compensable. (*Id*.) A two-day court trial was held on May 7 and 9, 2018. The parties submitted post-trial briefs. (ECF No. 43, 45, 46, 47.) All parties have consented to the full jurisdiction of a magistrate judge.

The court has no additional information regarding the severity of the crash. For example, neither party introduced photographs of the damaged vehicles. The accident report notes the damage to Paddock's car as "severe" and the damage to the semi-truck as "minor." (Ex. 1.) But the ambulance report characterizes the damage as "Moderate." (Ex. 2.) Paddock's airbag did not deploy, but this was a side-impact collision and Paddock's car lacked side-impact airbags. (ECF No. 40 at 74.) Paddock's car was towed from the accident, which ordinarily might suggest the damage was severe. But it may have been towed simply because Paddock was taken by ambulance to a hospital and no one was available to drive his car. Significantly, the box on the accident report next to "Vehicle Towed Due To Damage" is not checked.

Paddock was transported to a hospital by ambulance, complaining of abdominal pain (Ex. 2), complaints consistent with injuries caused by a seat belt (ECF No. 40 at 29). He denied any neck or back pain. (Ex. 2.) After a CT scan determined there were no injuries to his internal organs, he was released from the hospital. (Ex. 3.)

In the days following the collision Paddock began to experience severe pain from his low back into his right buttock and developed radiculopathy into his right hamstring and calf. (ECF No. 40 at 30-31; Ex. 6.) The pain continued to get worse. (ECF No. 40 at 34; Ex. 6.) After multiple rounds of physical therapy failed to fully resolve the symptoms, he eventually underwent spinal surgery in November 2013 to relieve pressure on the nerve root. (ECF No. 40 at 35-37.) Paddock contends that the collision caused the lumbar radiculopathy, and it was because of the lumbar radiculopathy that he required surgery. Therefore, the costs of the surgery are compensable as a result of the accident.

Although the United States "accepts responsibility for the motor vehicle accident ('MVA'), and the medical costs associated with it and commensurate damages for pain and suffering[,]" it "rejects responsibility for the surgery and accompanying costs necessitated by plaintiff's longstanding degenerative back issues unrelated to the [accident]." (ECF No. 45 at 1.) The United States argues that Paddock "is not entitled to any damages for any treatment beyond April 26, 2012, Ex. 89, Certified Billing Record. By that date he had recovered from the [accident] and was deemed to be doing well and had been working." (ECF No. 45 at 1.) The United States concedes damages totaling $9,171.58 (ECF No. 45 at 2) and suggests $10,000 for pain and suffering (ECF No. 45 at 3). Paddock does not suggest a different sum.

The United States asserts that "the balance of any damages are the result of plaintiff's long history of degenerative, congenital and work related injuries." (ECF No. 45 1.) And it is undisputed that before the accident Paddock had a history of back problems brought on by the physical demands of his work as a physical therapist and exacerbated by the fact that he suffered from conditions that made him especially susceptible to fractures. (*See, e.g.*, ECF No. 37 at 27 (noting diagnosis with osteopenia); ECF No. 41 at 24 (noting short pedicle syndrome); ECF No. 40 at 50 (noting Paddock was overweight).) Four relevant MRI studies reveal a progression of Paddock's condition independent of the March 2012 accident or other acute injuries. (*See* Exs. 41 (July 14, 2009); Ex. 44 (June 21, 2011); Ex. 55 (June 25, 2012); Ex. 72 (July 15, 2013).)

Paddock's first relevant back injury was a work-related compression fracture of his L1, L2, and L4 vertebrae sometime between 2002 and 2005. (ECF No. 40 at 15.) In 2011 Paddock suffered another work-related compression fracture, this time of the T12 vertebra. (ECF No. 40 at 21.) A neurologist, Dr. Kimball Fuiks, recommended kyphoplasty, but Paddock declined because the pain was getting better. (ECF No. 40 at 22-27.) And in February of 2014, almost two years after the accident, Paddock suffered another compression fracture at work, which led to spinal fusion surgery (ECF No. 40 at 38-39), thus rendering moot Dr. Fuiks's permanency opinion (ECF No. 43 at 6). Consequently, Paddock seeks compensation only with respect to a closed period between the accident and his subsequent work-related injury. (ECF No. 43 at 6.)

4

Paddock denied ever suffering pain in his legs prior to the collision (ECF No. 40 at 20) and specifically denied ever previously experiencing radiculopathy (ECF No. 40 at 31). However, Paddock's medical records state otherwise. They show that, prior to the accident, Paddock suffered from diabetes and neuropathy that caused numbness in his left leg. (ECF No. 40 at 15-16; *see also, e.g.*, Ex. 49 (note of Nov. 18, 2011 visit with primary care physician stating, "The patient's numbness in the left lower extremity is probably secondary to diabetic neuropathy.").) A medical report of a May 20, 2009 visit with Dr. Eric Conradson states that Paddock "is having some left lower extremity anterior pain …." (Ex. 39.) In July of 2009 a neurologist, Dr. Thomas Varghese, noted "left lower extremity paresthesias and pain, most likely secondary to lumbosacral radiculopathy, as supported by the MRI findings." (Ex. 42 at 2.)

At trial, Paddock suggested he did not have radiculopathy prior to the accident because each time he underwent a straight leg raise test the results were negative. (*See, e.g.*, ECF No. 40 at 18-19.) But in a July 2009 report Dr. Varghese suggested that Paddock suffered radiculopathy despite negative results on the straight-leg raise test he performed. (Ex. 42.) In a questionnaire Paddock completed around July of 2011 regarding follow-up treatment associated with his 2011 compression fracture, he reported pain throughout the back of his left leg. (Ex. 94.) But at other times prior to the collision Paddock denied "any pain extension or radiation into the buttocks or into the lower extremities." (Ex. 48 (October 13, 2011) *see also* Ex. 37 at 18 (Dr. Fuiks's testimony

5

that his records did not indicate Paddock had complained of leg pain prior to March of 2012).)

In his post-trial brief, relying on *Hanson v. Am. Family Mut. Ins. Co.*, 2006 WI 97, 294 Wis. 2d 149, 716 N.W.2d 866, Paddock argues that, "[r]egardless of causation, an injured is entitled to all past medical expenses, regardless of whether a doctor performed unnecessary surgery, so long as that person used good faith and ordinary care in selecting their doctor, and followed doctor's advice in good faith." (ECF No. 43 at 3 (emphasis omitted).) He argues that it is undisputed that he was injured in the accident, that he chose Dr. Fuiks in good faith, and that he followed Dr. Fuiks's advice in good faith. As such, even if Dr. Fuiks performed a surgery that the United States' expert believed was unsound or clinically useless, Paddock is entitled to an award of all of the medical expenses associated with that surgery. (ECF No. 43 at 9.)

But *Hanson* does not relieve a plaintiff of the need to prove that the injuries sustained (and thus the medical expenses incurred as a result) were caused by the accident at issue. *Hanson* relied on a long-standing principle set forth in *Selleck v. City of Janesville*, 100 Wis. 147, 75 N.W. 977 (1898), that "when a tortfeasor causes an injury to another person who then undergoes unnecessary medical treatment of those injuries despite having exercised ordinary care in selecting [a] doctor, the tortfeasor is responsible for all of that person's damages arising from any mistaken or unnecessary surgery." In *Hanson* it was undisputed that the plaintiff's injury was caused by the

6

accident at issue. Because the plaintiff used ordinary care in selecting her physician, she was entitled to compensation for the expenses incurred in undergoing surgery even if that surgery was allegedly unnecessary.

In *Hach v. Am. Family Mut. Ins. Co.*, 2010 WI App 19, 323 Wis. 2d 276, 779 N.W.2d 723 (unpublished), the court rejected the same argument which Paddock puts forth here—namely, that a plaintiff is relieved from proving causation when "some" injury from the accident is conceded. The court stated that, "[a]lthough *Hanson* requires a tortfeasor to pay for unnecessary or negligent treatment if reasonable care is used in selecting medical providers, *Hanson* did not expand the *Selleck* rule to eliminate the requirement that claimed past medical expenses be related to the accident." *Id.*, ¶ 14. Thus, Paddock must prove that the medical expenses he incurred after the accident were caused by the accident.

The court found Paddock credible and accepts that soon after the accident he began to experience pain in his left leg that was of a new or worse character than that which he suffered previously. Although Paddock's pre-existing conditions made him especially vulnerable to injury, it is well-established that the injuries he sustained are no less compensable. *Cf. Vosburg v. Putney*, 80 Wis. 523, 530, 50 N.W. 403, 404 (1891); Wis. JI – Civil 1720 ("If the plaintiff was more susceptible to serious results from the injuries received in this accident by reason of a (pre-existing disease or condition) (predisposition to disease) and that the resulting damages have been increased because

7

of this condition, this should not prevent you from awarding damages to the extent of any increase and to the extent such damages were actually sustained as a natural result of the accident."). The United States concedes as much. The dispute is with respect to treatment occurring after April 26, 2012, and, specifically, the subsequent surgery.

Paddock's evidence, at best, supports the conclusion that the collision "accelerated" his progressively degenerative condition. Significantly, Dr. Fuiks, a neurologist who treated Paddock, never opined that, but for the collision, he would not have needed surgery. Rather, Fuiks opined

> that the traumatic motor vehicle accident incurred by [Paddock] played a role in the acceleration of a pre-existing condition of lumbar spinal stenosis. Although his lumbar spinal stenosis may have worsened due to natural history and degeneration, the motor vehicle accident played a contributory role in accelerating the degree of degeneration with respect to lumbar spinal stenosis.

(Ex. 38 at 2.) Under certain circumstances an acceleration or exacerbation of a degenerative condition might result in compensatory damages. *Cf.* Wis. JI – Civil 1720; *see also Reising v. United States*, 60 F.3d 1241, 1244 (7th Cir. 1995) (applying IL law).

Paddock does not explain, much less prove, how any such acceleration in his case resulted in damages. Nor does Paddock address whether or how acceleration of a condition might be compensable under Wisconsin law. However, the court notes that Wisconsin has a pattern civil jury instruction regarding the "aggravation" or "activation" of a "latent disease or condition." Although "aggravation" or "activation" may be arguably distinct from "acceleration" the court nonetheless finds Wisconsin's

8

pattern civil jury instruction 1720 is helpful in assessing the question presented. It states that damages may not be awarded

> for any (pre-existing disease, condition, or ailment) (predisposition to disease) except insofar as you are satisfied that the (disease, condition, or ailment) (predisposition to disease) has been (aggravated) (activated) by the injuries received in the accident on (date). If you find that the plaintiff had a (pre-existing disease or condition which was dormant) (predisposition to disease) before the accident but that such (disease or condition) (predisposition to disease) was (aggravated) (brought into activity) because of the injuries received in the accident, then you should include an amount which will fairly and reasonably compensate (plaintiff) for such damages (plaintiff) suffered as a result of such (aggravation) (activation) of the condition.
>
> Any ailment or disability that the plaintiff may have had, or has, or may later have, which is not the natural result of the injuries received in this accident, is not to be considered by you in assessing damages. You cannot award damages for any condition which has resulted, or will result, from the natural progress of the pre-existing disease or ailment or from consequences which are attributable to causes other than the accident.

Wis. JI – Civil 1720; *but see Froseth v. Allied Prop. & Cas. Ins. Co.*, 2011 WI App 75, 334 Wis. 2d 146, 799 N.W.2d 929 (unpublished) (holding that the pattern instruction is inadequate because, "taken as a whole and considered in the absence of a substantial factor instruction, was potentially confusing and failed to accurately convey the law. A reasonable interpretation of the court's instruction would be that damages could only be awarded for aggravation if the aggravation was caused solely by the accident. This would be contrary to Wisconsin's deeply rooted substantial factor test."); *see also* Wis. JI – Civil 1715 ("The evidence shows that the plaintiff was previously injured when (briefly describe event). If the injuries of the plaintiff received in the accident on (date)

aggravated any physical condition resulting from the earlier injury, you should allow fair and reasonable compensation for such aggravation but only to the extent that you find the aggravation to be a natural result of the injuries received in the accident.").

The court finds that Paddock failed in his burden to show that the surgery or the medical care he received, other than that in the immediate aftermath of the accident, was the "natural result of the injuries received in this accident." The evidence adduced at trial persuades the court that, regardless of the accident, Paddock's pre-existing degenerative condition would have soon led to the manifestation of the pain and impairments Paddock began to suffer soon after the accident and which eventually led to surgery.

Nor has Paddock shown that the acceleration of his condition resulted in other damages. For example, there is no evidence that the injuries forced Paddock to end his career earlier than he would have and, thus, that he lost out on those earnings. Rather, Paddock continued working through the pain.

However, by accelerating Paddock's condition, the accident resulted in pain he otherwise would have been able to forego for at least a little while; thus, he lived more of his life in pain than he otherwise would have. For this Paddock is entitled to compensation. In the absence of any other figure suggested by Paddock, or even a suggestion that the figure proposed by the United States is inadequate, the court will award the Paddock the sum of $10,000 for his pain and suffering. The court finds the

sum of $10,000 appropriate in light of "(1) the duration of the conscious suffering, (2) prior health, (3) whether sedatives and other drugs were used to relieve pain and whether they were effective, and (4) whether some pain was attributable to preexisting physical disorders and, if so, whether this condition was aggravated by the incident in question." *Helleckson v. Loiselle*, 37 Wis. 2d 423, 429-30, 155 N.W.2d 45, 50 (1967).

Therefore, the court finds that, due to the negligence of a United States Postal employee acting within the scope of his employment, Paddock was injured in a motor vehicle accident on March 7, 2012. As a result of this accident, Paddock suffered damages. Paddock's as yet uncompensated damages consist of $9,171.58 in medical costs and $10,000 in pain and suffering. Accordingly, judgment shall be entered against the United States and in favor of Paddock in the sum of $19,171.58.

**SO ORDERED.**

Dated at Milwaukee, Wisconsin this 3rd day of August, 2018.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge